TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00611-CR






William Tedd, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0984357, HONORABLE THOMAS BLACKWELL, JUDGE PRESIDING 







 William Tedd appeals from his conviction for indecency with a child by contact.
See Tex. Penal Code Ann. § 21.11(a)(1) (West Supp. 2000). After the jury found Tedd guilty,
the trial court assessed punishment at fifty years' confinement in the Texas Department of
Criminal Justice--Institutional Division. (1) We will affirm the trial court judgment.


Factual and Procedural Background



 Because Tedd does not challenge the legal or factual sufficiency of the evidence to
support his conviction, we will discuss the facts only briefly. The victim, W.L., was nine years
old at the time of the offense; she first came into contact with Tedd when she and her ten-year-old
friend, A.G., skated to a snow cone stand in W.L.'s neighborhood. Tedd was working at the
stand. The girls stayed awhile, skating around outside the stand and sampling flavors. W.L. and
A.G. skated to the snow cone stand again the next day. Tedd invited the two inside the stand. 
He gave the girls free snow cones and let them make snow cones for customers. Tedd asked the
girls to go home with him.

 At trial, A.G. described the snow cone stand by comparison to the jury box and
counsel table. The space inside contained shelves, an ice chest, a freezer, a snow cone machine,
and a little table. It was cramped inside the stand when they were all in there. Tedd remained
inside the whole time. His fly was unzipped the whole time. A.G., feeling uncomfortable, went
out of the stand, leaving W.L. inside alone with Tedd for about five minutes. W.L. testified that
when they were alone, Tedd, while standing behind the victim, touched W.L. "in the crotch" with
his hands and fingers. W.L. demonstrated on an anatomically correct doll. W.L. and A.G. went
to W.L.'s home and decided not to tell anyone about the incident. However, after seeing Tedd
at a neighborhood pool several weeks later, W.L. became upset and afraid. She made an outcry
to her father and pointed out Tedd, who was eventually arrested and convicted for this offense.

 Tedd brings four points of error: the trial court erred in permitting the State to
make an improper jury argument, in admitting extraneous bad acts, and in admitting two State's
exhibits showing prior convictions.


Discussion


Jury Argument

 In point of error one, Tedd contends the prosecution's jury argument improperly
strayed from the evidence in the case. A proper jury argument must fall within one of four
general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) 
answer to argument of opposing counsel; and, (4) a plea for law enforcement. See Smith v. State,
898 S.W.2d 838, 845 (Tex. Crim. App. 1995); Cannon v. State, 668 S.W.2d 401, 404 (Tex.
Crim. App. 1984). A prosecutor may not use jury argument to get before the jury, either directly
or indirectly, evidence which is outside the record. See Jordan v. State, 646 S.W.2d 946, 948
(Tex. Crim. App. 1983); Capps v. State, 758 S.W.2d 929, 931 (Tex. App.--Beaumont 1988, pet.
ref'd). Whether an improper argument constitutes reversible error depends on an evaluation of
the argument in light of the entire record and the probable impact it may have had on the minds
of the jurors. See Hernandez v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991); Poole v.
State, 974 S.W.2d 892, 904 (Tex. App.--Austin 1998, pet. ref'd). An instruction to disregard an
improper jury argument generally suffices to cure error unless the remark is so inflammatory that
its prejudicial effect cannot reasonably be removed by such an admonishment. See Bower v.
State, 769 S.W.2d 887, 907 (Tex. Crim. App. 1989); Poole, 974 S.W.2d at 904. (2)

 The prosecutor made the challenged argument to dispel the possibility that the
contact with W.L. occurred accidentally. In cross-examining W.L., defense counsel attempted
to show that her description of where Tedd touched her had varied somewhat and that Tedd might
have touched her on her lower abdomen, not her genitals, in a manner that could have been
consistent with accidental contact. The prosecutor argued:


There's no evidence in the record that they were about to knock something over
in the snow cone stand and he had to grab out and accidentally touched them. And
let's face it, that just doesn't make sense, because he touched both of these little
children. He grabbed one, placed her on his lap.



(Emphasis added.) Appellant contends that this last statement improperly introduced the jury to
evidence that was not in the record.

 The evidence showed that the two girls and Tedd were all in the stand at the same
time and that the conditions were crowded. It would not have been unreasonable for the jury to
infer from the evidence of the conditions in the stand that, at one time or the other, Tedd might
have touched each of the girls in some way, possibly by accident. Although W.L. did not testify
that she was ever on Tedd's lap, her description that Tedd was behind her when he grabbed her
was similar enough to the State's argument that the jury would not necessarily consider the remark
as a reference to the other child. The record does not contain evidence that A.G. was the one
pulled onto Tedd's lap. The jury only knew that A.G. became uncomfortable for some reason and
left the stand before the incident involving W.L. Therefore, the jury would not necessarily have
interpreted the remark as meaning that Tedd had touched the other girl offensively. The jury may
reasonably have interpreted the remark to refer to the offense for which Tedd was on trial; that
even though he might have accidentally touched each girl because of the crowded conditions, his
conduct with regard to the victim was deliberate, occurring after the other girl had left the stand.

 In view of the evidence in the record, the remark was not so inflammatory and
prejudicial as to have been incurable by the trial court's instruction to the jury to disregard any
statement by the attorney that did not comport with the evidence heard from the witness stand. 
We overrule Tedd's first point of error.


Extraneous Offense


 In his second point of error, Tedd complains that the trial court erred in admitting,
over his objection, extraneous bad acts for which the State had not supplied proper notice. To
constitute an extraneous offense, the evidence must show a crime or bad act other than the one
alleged, connected to the defendant. See Harris v. State, 738 S.W.2d 207, 224 (Tex. Crim. App.
1987). The trial court may admit evidence of other crimes, wrongs, or acts of the accused, if
relevant to an issue other than character, provided, upon timely request by the accused, the State
gives the defendant reasonable notice in advance of trial. See Tex. R. Evid. 404(b); Espinosa v.
State, 853 S.W.2d 36, 37-8 (Tex. Crim. App. 1993); Neuman v. State, 951 S.W.2d 538, 539
(Tex. App.--Austin 1997, pet. ref'd). However, such notice is not required if the evidence arises
from the same transaction. See Tex. R. Evid. 404(b).

 Tedd objected to A.G.'s testimony that during the entire time the girls were inside
the snow cone stand, Tedd's fly was unzipped. Following the objection, the court excused the
jury. A.G.'s further testimony concerning being pulled onto Tedd's lap and feeling what she
thought was his penis against her leg was never admitted before the jury. (3)

 The testimony that the jury heard is not express evidence of a bad act. The simple
fact that Tedd's zipper was down (4) does not in and of itself constitute an offense or bad act. The
testimony merely describes circumstances surrounding the actions for which Tedd was being
tried--the contact with W.L. This testimony arguably is relevant to establishing Tedd's intent
rather than to show that Tedd acted in conformance with his character. Even if the testimony is
not material to establishing an element of the offense, it describes an event that arose as part of
the same transaction and was admissible without notice. See Tex. R. Evid. 404(b); Cantu v.
State, 939 S.W.2d 627, 636 (Tex. Crim. App. 1997) (evidence concerning rape, robbery, and
murder of another victim during same episode as that for which defendant on trial admissible as
same transaction contextual evidence to impart to jury information essential to understanding
context and circumstances of offense); Nelson v. State, 864 S.W.2d 496, 498-99 (Tex. Crim.
App. 1993) (sexual assault and stabbing of second victim which occurred simultaneously with
assault and stabbing of murdered victim admissible as same transaction contextual evidence which
was necessary to jury's understanding of charged offense); Jannise v. State, 789 S.W.2d 623,
626-27 (Tex. App.--Beaumont 1990, pet. ref'd) (evidence of assault on different victim in same
room as victim of event so intertwined and intermingled that admissible to give jury full
understanding). We overrule point of error two.


Punishment Phase Errors

 Tedd contends that the trial court erred in admitting State's exhibits one and two. 
Each exhibit was a "penitentiary packet," the set of certified papers from the Institutional Division
of the Texas Department of Corrections used to prove prior convictions for enhancement
purposes. Tedd contends that there was a fatal variance between the indictment and the proof
offered because paragraph II of the indictment alleged a previous conviction that occurred on
October 6, 1986, while the documents in the exhibit showed that his conviction was appealed and
not affirmed until November 18, 1987. Comparable contentions have been consistently rejected:


The appeal, the affirmance and the issuance of the mandate which was filed with
the clerk of the trial court on June 29, 1960 did not affect the date of the finality
of the judgment rendered and entered and the sentence pronounced by the trial
court on January 11, 1960.



Rener v. State, 416 S.W.2d 812, 814 (Tex. Crim. App. 1967); see Caballero v. State, 725
S.W.2d 776, 778 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd); Wilson v. State, 689 S.W.2d
311, 311-12 (Tex. App.--Fort Worth 1985, pet. ref'd).

 The state's evidence showed that the trial court's judgment and sentence were dated 
October 6, 1986. That conviction was affirmed on appeal November 18, 1987. All of these dates
preceded May 15, 1998, the date of the primary offense. (5) The State proved what the State
alleged. Accordingly, we overrule Tedd's third point of error.

 In his fourth point of error, Tedd complains that the trial court erred in admitting
State's exhibit two, another penitentiary packet. Tedd again complains of a "fatal variance," this
time between the cause number alleged in paragraph III of the indictment and the cause number 
shown on one page of the exhibit. The indictment alleged a prior offense in cause number
45,358. The "Assessment of Punishment" page of the pen packet reflects cause number 45,359
with the "9" crossed out and changed to "8." There are no other discrepancies.

 In alleging a prior conviction to enhance punishment, before a variance between
the pleading and proof may be held fatal, the variance must be both material and prejudicial to the
defendant. See Hall v. State, 619 S.W.2d 156, 157 (Tex. Crim. App. 1980); Plessinger v. State,
536 S.W.2d 380, 381 (Tex. Crim. App. 1976). Tedd does not show that he was misled,
surprised, or unable to tell what prior conviction the State sought to prove. There is no fatal
variance in this case. See Cole v. State, 611 S.W.2d 79, 82 (Tex. Crim. App. 1980) (where
indictment alleged cause no. 87954 and proof referred to cause number 87594, no fatal variance);
Straughter v. State, 801 S.W.2d 607, 611 (Tex. App.--Houston [1st Dist.] 1990, no pet.) (where
indictment alleged cause number 494,316 and proof showed cause number 474,316, no fatal
variance). We overrule Tedd's fourth point of error.


Conclusion



 We have considered and overruled all of Tedd's points of error. Accordingly, we
affirm the trial court's judgment of conviction.



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 31, 2000

Do Not Publish

1. Tedd's punishment was enhanced by two prior convictions.
2. The State contends that Tedd did not properly follow the necessary steps to preserve error
because he did not request a mistrial. The exchange between the court and defense counsel is
rather confusing. Defense counsel objected, and, although the judge gave an instruction, he then
said "overruled" twice with regard to counsel's objection. We will consider the point on the
merits.
3. The State first argues that Tedd did not make a valid request for the State to provide notice
but rather filed a motion addressed to the court asking it to order the State to provide notice on
which the court never ruled. See Mitchell v. State, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998)
(request to court not enough to trigger State's duty). Tedd responds that the State, having given
notice of some extraneous offenses, was obligated to amend that notice with any new offenses it
might use. In view of our disposition of the point, we will not rule on this contention. Tedd
claims that the State "waived" admission of the evidence because it answered negatively the
court's question about a proper ground of admission. Again, we need not address this contention.
4. A.G. did not testify that Tedd's penis was exposed.
5. Tedd relies on Arbuckle v. State, 105 S.W.2d 219, 222 (1937). Arbuckle involved the
problem of a previous conviction used for enhancement when the appeal was still pending at the
time of the primary offense, which is not the problem in Tedd's case.


er 18, 1987. Comparable contentions have been consistently rejected:


The appeal, the affirmance and the issuance of the mandate which was filed with
the clerk of the trial court on June 29, 1960 did not affect the date of the finality
of the judgment rendered and entered and the sentence pronounced by the trial
court on January 11, 1960.



Rener v. State, 416 S.W.2d 812, 814 (Tex. Crim. App. 1967); see Caballero v. State, 725
S.W.2d 776, 778 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd); Wilson v. State, 689 S.W.2d
311, 311-12 (Tex. App.--Fort Worth 1985, pet. ref'd).

 The state's evidence showed that the trial court's judgment and sentence were dated 
October 6, 1986. That conviction was affirmed on appeal November 18, 1987. All of these dates
preceded May 15, 1998, the date of the primary offense. (5) The State proved what the State
alleged. Accordingly, we overrule Tedd's third point of error.

 In his fourth point of error, Tedd complains that the trial court erred in admitting
State's exhibit two, another penitentiary packet. Tedd again complains of a "fatal variance," this
time between the cause number alleged in paragraph III of the indictment and the cause number 
shown on one page of the exhibit. The indictment alleged a prior offense in cause number
45,358. The "Assessment of Punishment" page of the pen packet reflects cause number 45,359
with the "9" crossed out and changed to "8." There are no other discrepancies.

 In alleging a prior conviction to enhance punishment, before a variance between
the pleading and proof may be held fatal, the variance must be both material and prejudicial to the
defendant. See Hall v. State, 619 S.W.2d 156, 157 (Tex. Crim. App. 1980); Plessinger v. State,
536 S.W.2d 380, 381 (Tex. Crim. App. 1976). Tedd does not show that he was misled,
surprised, or unable to tell what prior conviction the State sought to prove. There is no fatal
variance in this case. See Cole v. State, 611 S.W.2d 79, 82 (Tex. Crim. App. 1980) (where
indictment alleged cause no. 87954 and proof referred to cause number 87594, no fatal variance);
Straughter v. State, 801 S.W.2d 607, 611 (Tex. App.--Houston [1st Dist.] 1990, no pet.) (where
indictment alleged cause number 494,316 and proof showed cause number 474,316, no fatal
variance). We overrule Tedd's fourth point of error.


Conclusion



 We have considered and overruled all of Tedd's points of error. Accordingly, we
affirm the trial court's judgment of conviction.